## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| | : | |
| EAN KING, | : | |
| Plaintiff, | : | CIVIL CASE NO. |
| | : | 3:20-CV-01905 (JCH) |
| v. | : | |
| | : | |
| STRAWBERRY PARK RESORT | : | |
| CAMPGROUND, INC., | : | |
| Defendant. | : | FEBRUARY 28, 2023 |

**RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DOC. NO. 29)**

### I.   INTRODUCTION

Plaintiff Ean King ("King") originally brought this action against defendant Strawberry Park Resort Campground, Inc. ("Strawberry Park") in the Superior Court of Connecticut, claiming employment discrimination.  See Complaint, Def.'s Ex. A to Notice of Removal (Doc. No. 2) (hereinafter "Compl.").  Specifically, Count One of King's Complaint alleges gender discrimination in violation of the Connecticut Fair Employment Practices Act ("CFEPA"); Count Two alleges sexual orientation discrimination in violation of CFEPA; and Count Three alleges "gender/sexual orientation discrimination" in violation of Title VII of the Civil Rights Acts of 1964 and 1991.  Compl. at 1–3. [1]  Defendant Strawberry Park Resort Campground, Inc. ("Strawberry Park") subsequently removed the case to this court.  See Defendant's Notice of Removal (Doc. No. 2).  King's case stems from Strawberry Park's decision to

---

[1] The court refers to the page numbers in citing to King's Complaint because his paragraph numbering restarts with each Count.  See generally Compl.

terminate him in the Summer of 2019, the day after King disclosed his sexual orientation in a conversation with his direct supervisor.  Compl. at 1.

Strawberry Park has moved for summary judgment on all three Counts of discrimination, as well as the issue of damages.  See Motion for Summary Judgment ("Def.'s Mot.") (Doc. No. 29); Memorandum of Law in Support of Defendant's Motion for Summary Judgment ("Def.'s Mem.") (Doc. No. 29-10).  King opposes that Motion.  See Plaintiff's Objection re: Defendant's Motion for Summary Judgment ("Pl.'s Mot.") (Doc. No. 30); Memorandum of Law in Support of Plaintiff's Objection to Defendant's Motion for Summary Judgment ("Pl.'s Mem.") (Doc. No. 30-1).

For the reasons stated below, Strawberry Park's Motion for Summary Judgment (Doc. No. 29) is granted in part, and denied in part.

## II.    BACKGROUND[2]

Strawberry Park "operates a campground facility in Preston, Connecticut," and typically hires extra employees for its camping season, which begins Memorial Day Weekend and winds down around Labor Day weekend.  Plaintiff's Local Rule 56(a)2 Statement ("Pl.'s LR 56(a)2 Stmt") ¶¶ 3–4 (Doc. No. 30-2).  King was one such employee: he began his job as a part-time housekeeper, "cleaning the interior of [the] mobile home units used for camping," in April 2019.  Id. at ¶¶ 21, 25.  King understood that his position was seasonal, and he worked between approximately seven and a half

---

[2] The court draws primarily from the parties' Local Rule 56(a) Statements (hereinafter "LR 56(a) Statement") and supporting exhibits in summarizing the material facts, construing those facts in the light most favorable to King.  Because King's LR 56(a) Statement, in adherence of Local Rule 56(a)2, "include[s] a reproduction of each numbered paragraph in the moving party's Local Rule 56(a)1 Statement followed by a response to each paragraph admitting or denying the fact", the court cites solely to King's LR 56(a) Statement where facts are admitted.  D. Conn. Local R. 56(a)2.  While the following facts are almost entirely undisputed, the court makes it clear in the text where a fact is disputed.

hours to fourteen hours per week until his termination on or about June 16, 2019.  Id. at ¶¶ 24, 35, 45; King Deposition ("King Dep."), Pl.'s Ex. A at 27:4–8 (Doc. No. 30-3).  As a part-time, seasonal employee, King did not receive benefits such as "health or dental insurance, retirement, vacation leave, disability insurance, etc."  Pl.'s LR 56(a)2 Stmt. ¶ 37.[3]

At the campground, King reported directly to Lacia Euell ("Euell"), who had worked with him in his other part-time job at Panera and was the one who initially recommended King apply for his job with Strawberry Park.  Id. at ¶ 26.  King confessed that he was "lazy and did not want to go to the store" for cleaning products; because he had access to such products through his housekeeping position, he would occasionally ask Euell for permission to bring some home for personal use.  Id. at ¶¶ 30–31.  On "at least four [ ] occasions", King brought cleaning supplies home after receiving permission from Euell to do so.  Id. at ¶¶ 29, 31.

Euell's direct supervisor, Jeremy Klemm ("Klemm"), only interacted with King one time.  Id. at ¶ 34.  King was "very loud" and "every other word was a curse word", which prompted Klemm to write to Euell for her to "warn [King] about his unprofessional conduct in the workplace within earshot of guests."  Id.;[4] see also Affidavit of Klemm ("Klemm Aff."), Def.'s Ex. D ¶ 8 (Doc. No. 29-5).  Klemm swore that he also spoke with

---

[3] Puzzlingly, King specifically claims in his Complaint that he "has and will in the future be deprived of health and medical insurance benefits, retirement and pension benefits, vacation pay, sick pay, and other benefits available through his employment."  Compl. at 4.

[4] King denies the substance of this LR 56(a) Statement, see Pl.'s LR 56(a)2 Stmt. ¶ 34, but does not cite to anything in the record that contradicts it—in fact, King does not cite to anything at all.  The court therefore deems this statement admitted, pursuant to Local Rule 56(a)3.  See D. Conn. Local R. 56(a)3 ("[f]ailure to provide specific citations to evidence in the record as required by this Local Rule may result in the Court deeming admitted certain facts that are supported by the evidence in accordance with Local Rule 56(a)1").

Euell, on or about June 10, 2019, about "difficulties that she was having with Mr. King regarding his performance of the job, motivation to do the work, and his bad attitude and unprofessional conduct" such as "language and rudeness to others", and "encouraged Euell to terminate" King.  Pl.'s LR 56(a)2 Stmt. ¶ 34; Klemm Aff. ¶ 10.[5]

Several days later, and a day before King was ultimately terminated, Euell joined a discussion between King and his girlfriend, Racheal Perry ("Perry").  Pl.'s LR 56(a)2 Stmt. ¶¶ 48, 50.   In her deposition for the instant case, Perry described the interaction as follows:

> [King] and I were talking about [our coworker's issues with her girlfriend]. And [Euell] had come over into the conversation and then she was included in that conversation.  And then once I had told her, you know, the girl was having troubles with her girlfriend, [Euell] had said – she had stated that she has a problem with gay people because of something that happened with her brother while he was incarcerated.  And [King] had come out and said he was bisexual.  And then [Euell] just – she walked away.

Perry Deposition ("Perry Dep."), Pl.'s Ex. B at 26:24–27:8.  When asked how Euell's treatment of King changed after learned of his sexual orientation, Perry testified that "[i]t was more [Euell's] attitude towards him. [. . .] It's hard to explain, you know, somebody's features and their tone.  But it was all just disgust and demeaning. Like he was just so small . . . ."  Id. at 26:12–14, 26:16–19.  In fact, Perry was so upset over the interaction that she resigned from Strawberry Park shortly thereafter, texting her supervisor that she had "witnessed something terrible" and could not come back to work.  See id. at 24:15–23, 26:1–11.  When asked at her deposition to describe this "terrible" thing, Perry testified:

---

[5] Notably, Klemm's Affidavit is devoid of any statement that he and Euell discussed King's requests to take home cleaning supplies.  See generally Klemm Aff.

4

> [It was t]he way that [Euell] reacted to [King] when he had come out to her
> and said he was bisexual.  It was just – the disgust and the look in her face.
> And she – it just – it changed completely. . . .  [I]t's the look on her face and
> the way she treated him.  Her attitude changed.  It's just wrong.  It's
> disgusting.  It's demeaning.

Id. at 26:1–11.[6]

That same day, King also requested permission to take cleaning supplies home, and Euell refused for the first time.  Pl.'s LR 56(a)2 Stmt. ¶ 31.  King testified that, because he did not receive permission, he did not take supplies that day.  Id.  The following day, King was fired: he "received a text message from Euell . . . telling him that [ ] her manager said that she had to let him go . . . ."  Id. at ¶ 35.  The reason that Euell gave, for why she allegedly was told to fire King, was "for taking supplies from the supply closet" rather than any of the behavioral issues allegedly discussed in her meeting with Klemm several days prior.  Id.

King did not apply for a job to replace his part-time employment with Strawberry Park following his termination.  Id. at ¶ 53.  He worked at Panera Bread before and during his time with Strawberry Park, and he continued working there between twenty-seven and forty hours per week until the pandemic caused mass layoffs in March 2022.

---

[6] In its Memorandum supporting its Motion for Summary Judgment, Strawberry Park describes this conversation differently, stating that:

> Perry described Euell as having a look on her face when she heard the story about the co-worker's relationship issues with her girlfriend, but there is no record evidence that Euell expressed any disdain, either through words or expressions, that was disdain for [King]'s . . . sexual orientation . . . .

Def.'s Mem. at 22–23.  A review of Perry's deposition, as excerpted above, shows that Strawberry Park's description here is patently wrong.  See also Section IV.B.1, infra at p. 13 n.13.

Id. at ¶¶ 9–10, 22.[7]  King did not look for work between his layoff from Panera and the date of his deposition in the instant case, August 16, 2021, because "he was making more money collecting unemployment benefits than he made when working."  Id. at ¶ 11.  The extent of job searches that King does now is limited to "look[ing] online . . . for warehouse or hotel jobs" and having "his mother or sister [ ] apply for him . . . ."  Id. at ¶ 12.

King filed concurrent complaints with the Connecticut Human Rights Organization ("CHRO") and the Equal Employment Opportunity Commission ("EEOC") in October 2019 and received jurisdictional releases from both the following year. Compl. at 2.  He filed the instant action in Connecticut Superior Court on November 25, 2020, and Strawberry Park removed the case to this court on December 23, 2020.  Id. at 1; Notice of Removal at 1.  Strawberry Park subsequently filed the instant Motion, arguing, inter alia, that, (1) with regard to King's discrimination claims, King has established neither the requisite inferences of discrimination nor that Strawberry Park's proffered reason for King's termination was false; (2) King is not entitled to damages in the form of backpay because he did not mitigate his damages; and (3) King has not provided any facts supporting an award of emotional distress damages.  See Def.'s Mot. at 2.

### III.   LEGAL STANDARD

A motion for summary judgment may be granted only where the moving party can establish that "there is no genuine dispute as to any material fact and the movant is

---

[7] King did not receive benefits, such as health or dental insurance, retirement, and disability insurance, from his position at Panera, though he did receive one week of paid vacation per year.  Pl.'s LR 56(a)2 Stmt. ¶ 10.

entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 256 (1986); <u>Wright v. N.Y. State Dep't of Corr.</u>, 831 F.3d 64, 71-72 (2d Cir. 2016).  If the moving party satisfies this burden, the nonmoving party must set forth specific facts demonstrating that there is indeed "a genuine issue for trial."  <u>Wright v. Goord</u>, 554 F.3d 255, 266 (2d Cir. 2009).  A genuine issue exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  <u>Cross Commerce Media, Inc. v. Collective, Inc.</u>, 841 F.3d 155, 162 (2d Cir. 2016).  The role of a district court in considering a motion for summary judgment "is . . . only to determine whether, as to any material issue, a genuine factual dispute exists."  <u>In re Dana Corp.</u>, 574 F.3d 129, 151 (2d Cir. 2009).  In making this determination, the district court "may not make credibility determinations or weigh the evidence."  <u>Kaytor v. Elec. Boat Corp.</u>, 609 F.3d 537, 545 (2d Cir. 2010) (internal citations and quotation marks omitted).  Rather, the court must resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought.  <u>See</u> <u>Loeffler v. Staten Island Univ. Hosp.</u>, 582 F.3d 268, 274 (2d Cir. 2009).

## IV.    ANALYSIS

King has alleged three Counts[8] and claims damages in the form of lost wages, emotional distress, and attorney's fees.  <u>See</u> Compl.; Plaintiff's Initial Discovery Responses ("Pl.'s Discovery Responses"), Def.'s Ex. E ¶ II(b) (Doc. No. 29-6).  King

---

[8] In his Memorandum opposing Strawberry Park's Motion for Summary Judgment, King appears to have split his Third Count, alleging both gender and sexual orientation discrimination in violation of Title VII, <u>see</u> Compl. at 3 ("Third Count: Gender/Sexual Orientation Discrimination – Federal Law Claims"), into two separate ones, <u>see</u> Pl.'s Mot. at 1 (Count Three: Wrongful termination based on gender in violation of Title VII . . . ; Count Four: Wrongful termination based on sexual orientation in violation of Title VII . . . .").  Because King's Complaint, as well as Strawberry Park's Summary Judgment Memoranda addressing the Complaint, lists only three Counts, the court does the same.  <u>See</u> Sections IV.A and IV.B, <u>infra</u>.

alleges that Strawberry Park discriminated against him in violation of CFEPA and Title VII; in Count One and the first half of Count Three, based on his gender, and in Count Two and the second half of Count Three, based on his sexual orientation.  Compl. at 1–4.  Strawberry Park has moved for summary judgment on all three Counts, as well as on King's claimed lost wages and emotional distress damages.  See Def.'s Mem.  In opposing its liability under CFEPA and Title VII, Strawberry Park groups King's gender discrimination claims under the state and federal statutes together, and the sexual orientation claims together, because "the [legal] analysis on each . . . is the same" and the "factual allegations as to each . . . is identical . . . ."  Def.'s Mem. at 14.  The court does the same.  See also Brittell v. Dept of Corr., 247 Conn. 148, 164 (1998) ("In defining the contours of an employer's duties under our state antidiscrimination statutes, we have looked for guidance to federal case law interpreting Title VII . . . , the federal statutory counterpart to § 46a–60 [CFEPA]").

A.    Gender Discrimination (Counts One and Three)

Strawberry Park argues that Count One and part of Count Three, i.e. King's claims of gender-based discrimination, should be dismissed because King "testified in his deposition that he did not believe he was discriminated against for being male (gender), but that it was because of sexual orientation (bisexual)."  Def.'s Mem. at 14; see also Pl.'s LR 56(a)2 Stmt. ¶ 52 (admitting same).  In his Opposition Motion, King "does not contest [Strawberry Park's M]otion regarding gender discrimination in Counts One and Three" and requests only that this court deny Strawberry Park's Motion for Summary Judgment "as to Counts Two and Four [sic]."  Pl.'s Mot. at 1–2.

In light of the above, absent objection, the court grants summary judgment of King's gender discrimination claims alleged in Count One and part of Count Three.

B.      Sexual Orientation Discrimination (Counts Two and Three)

Strawberry Park moves for summary judgment on King's claims of sexual-orientation discrimination, arguing that King can neither establish a prima facie case of discrimination, nor carry his burden in coming forward with evidence upon which a reasonable juror could find that Strawberry Park's proffered reason for terminating King is pretextual.  See Def.'s Mot. at 2.

At the summary judgment stage, employment discrimination claims are analyzed using the burden-shifting framework established in McDonnell Douglas Corp. v. Green. See 411 U.S. 792, 802–04 (1973).  Under this framework, King has the initial burden of presenting a prima facie case of discrimination.  See, e.g., Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 252–53 (1981).  This requires coming forward with evidence that he: (1) is a member of a protected class; (2) was performing his duties satisfactorily; and (3) was discharged; (4) in circumstances supporting an inference of discrimination on the basis of his membership in the protected class.  See Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir.2000).  If King establishes a prima facie case, the burden shifts to his employer, Strawberry Park, to show a "legitimate, nondiscriminatory reason" for the adverse employment action.  See McBride v. BIC Consumer Prod. Mfg. Co., 583 F.3d 92, 96 (2d Cir. 2009).  Finally, once Strawberry Park puts forth a nondiscriminatory reason, the burden shifts back to King to show that the offered reason is a mere "pretext" for unlawful discrimination.  Id.

9

1.      <u>Prima</u> <u>Facie</u> Case: Inference of Discrimination[9]

Strawberry Park begins its arguments against an inference of sexual orientation discrimination by pointing out that "[t]here is absolutely no allegation, let alone record evidence, that Plaintiff was treated less favorably than any similarly-situated female or similarly-situated non-bisexual employee was treated . . . ."  Def.'s Mem. at 17. Therefore, Strawberry Park continues, King has "failed to establish the fourth prong of the prima facie case for disparate treatment based on either his gender (male) or his sexual orientation (bisexual) and summary judgment in Strawberry Park's favor is appropriate on all three [C]ounts of his Complaint."  <u>Id.</u>  However, King has not met the standard for disparate treatment because he does not allege it.  Disparate treatment is only one of several ways to establish an inference of discrimination.[10]  King argues that he has met the <u>de</u> <u>minimus</u> burden, at the <u>prima</u> <u>facie</u> stage, by coming forward with (1) Perry's testimony about "the conversation between [King] and Lacia Euell, [wherein Euell] stated that she did not like gay people" and (2) Perry's description of "Euell's look of disgust directed towards [King] after learning that . . . [he] was bisexual."  Pl.'s Mem. at 7.

---

[9] For the purposes of its Summary Judgment Motion only, Strawberry Park does not dispute the first three prongs of King's <u>prima</u> <u>facie</u> case.  <u>See</u> Def.'s Mem. at 18 n.4.  Thus, the court confines its analysis of King's <u>prima</u> <u>facie</u> case to the fourth prong.

[10] Indeed, the Second Circuit has explained that an inference of discriminatory intent, satisfying the fourth prong of the <u>McDonnell</u> <u>Douglas</u> test, can be raised in:

> several circumstances, including, <u>but</u> <u>not</u> <u>limited</u> <u>to</u>: the employer's continuing, after discharging the plaintiff, to seek applicants from persons of the plaintiff's qualifications to fill that position; or the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge.

<u>Abdu-Brisson v. Delta Air Lines, Inc.</u>, 239 F.3d 456, 468 (2d Cir. 2001) (citing <u>Chambers v. TRM Copy Centers Corp.</u>, 43 F.3d 29, 37 (2d Cir. 1994)) (emphasis added).

"[A]n inference of discriminatory intent may be established by, inter alia, 'the employer's . . . invidious comments about others in the employee's protected group; or . . . the sequence of events leading to the plaintiff's discharge.'" Sassaman v. Gamache, 566 F.3d 307, 312 (2d Cir. 2009) (quoting Abdu-Brisson v. Delta Air Lines, Inc., 239 F.3d 456, 468 (2d Cir. 2001)).  In determining whether a comment is "probative" of discriminatory intent on behalf of an employer—rather than a "stray remark" not indicative of the requisite discriminatory animus to sustain this kind of employment action—courts in this Circuit consider the following factors:

> (1) who made the remark (i.e., a decision-maker, a supervisor, or a low-level co-worker); (2) when the remark was made in relation to the employment decision at issue; (3) the content of the remark (i.e., whether a reasonable juror could view the remark as discriminatory); and (4) the context in which the remark was made (i.e., whether it was related to the decision-making process).

Henry v. Wyeth Pharmaceuticals, Inc., 616 F.3d 134, 149 (2d. Cir. 2010) (collecting cases).

In the instant case, the person who remarked that she had "issues with gay people" was King's direct supervisor; "one of two individuals"[11]—the other being Klemm—with "input into the decision to terminate" King.  Def.'s Mem. at 20.  Euell made this remark the day before she notified King of his termination.  Pl.'s LR 56(a)2 Stmt. ¶

---

[11] It seems that Strawberry Park tries to skirt liability here by claiming that Klemm—as the one tasked with approving Euell's termination decisions—was unaware of Euell's discriminatory animus.  See Def.'s Mem. at 20.  If this is the case, the court is unpersuaded.  The Second Circuit has acknowledged that, so long as the biased individual played a meaningful role in the termination process, a Title VII plaintiff may succeed on her claim even absent evidence of bias by the ultimate decisionmaker.  See Holcomb v. Iona Coll., 521 F.3d 130, 143 (2d Cir.2008).  King may, therefore, rely on the so-called cat's paw liability theory in asserting his Title VII and CFEPA claims here.  See, e.g., Herbert v. Nat'l Amusements, Inc., 2012 WL 201758, at *3 (D. Conn. Jan.23, 2012) (allowing plaintiff to advance a cat's paw theory of liability in a CFEPA claim).  If King comes forward with evidence upon which a reasonable juror can find that Euell's ultimate decision to terminate King was motivated by discriminatory animus, Klemm's claimed ignorance of this fact is immaterial.

35.  The remark's contents are indisputably discriminatory, given that Euell not only said she had problems with gay people but also allegedly reacted with noticeable disgust upon learning King's sexual orientation.[12]  Finally, while the remark itself was not made in a context related to the decision-making process to fire King, a juror could reasonably infer that it bore on Euell's termination decision anyway: Euell was allegedly "encouraged" to terminate King on June 10, 2019, Pl.'s LR 56(a)2 Stmt. ¶ 34, but did not exercise her discretion to do so until six days later, the day after she learned King was bisexual.

Finally, citing to <u>Yaa Asante-Addae v. Sodexo, Inc.</u> (hereinafter "<u>Sodexo</u>"), Strawberry Park correctly states that, if a comment, "without any additional facts or context, . . . require[s] a series of logical leaps to [be] construe[d]" as discriminatory, then that comment does not support an inference of discrimination.  No. 3:13-CV-00489, 2015 WL 1471927 at *12 (D. Conn. Mar. 31, 2015), <u>aff'd</u>, 631 F. App'x 68 (2d Cir. 2016).  The allegedly discriminatory comments examined in <u>Sodexo</u>, however, stand in stark contrast to Euell's comment in this case.  In <u>Sodexo</u>, the plaintiff complained of comments made by those above her as well as employees below her, claiming that the remarks revealed her employer's discriminatory animus.  <u>Id.</u> at *10–15.

---

[12] Strawberry Park also argues that, "even if Euell's comment as to gay people could be considered a discriminatory statement toward gay people by a fact finder, [King] adduced no evidence that is [sic] was used in a discriminatory manner toward him – a bisexual person."  Def.'s Mem. at 21.  Strawberry Park argues that King belongs to a class of bisexual people, not gay people, and thus Euell's remark was not discriminatory towards him.  <u>Id.</u>

The court does not draw such a distinction—nor, the court speculates, would Euell, considering her animus supposedly stems from a sexual assault that her brother suffered in prison.  More importantly, however, the comment about gay people itself was <u>accompanied</u> by Euell's severe reaction to learning of King's sexual orientation.  Strawberry Park seems to blur the distinction between the evidence of discriminatory animus and the adverse employment action: the question is not whether Euell <u>said</u> she had issues with King due to his sexual orientation—the question is whether Euell's statements <u>and actions</u> support a reasonable inference that she did.

The court disagreed, however, for several reasons: the remarks were "all facially neutral", "ambiguous", "not ethnically derogatory", and cited without "facts to support [the plaintiff's] suspicion that [they] were directed toward her." Id. at *12–13.  Perhaps most significant to the case at bar, the Sodexo court concluded that the remarks made by the plaintiff's supervisors, which proceeded the plaintiff's termination by at least one and a half years, were "too remote in time and context to support a reasonable inference that [the defendant]'s . . . [adverse employment action] was a result of any discriminatory intent." Id. at *13.  Here, the Euell's remark was said in King's presence and her 'look of disgust' was a direct reaction to hearing of King's sexual orientation, and both happened a day before Euell's text claiming her supervisor had asked her to let King go.  Pl.'s LR 56(a)2 Stmt. ¶ 35.

Thus, a rational juror could find, based on the evidence that King has come forward with on the record, that King's termination occurred in circumstances giving rise to an inference of discrimination.

### 2.    Pretext

Under McDonnell Douglas, once a plaintiff establishes a prima facie case of discrimination, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for the employee's termination.  In this case, Strawberry Park argues that it "terminated King . . . because [he] had taken cleaning supplies home for personal use and that was a violation of Strawberry Park's policies." Def.'s Mem. at 34.[13]  Pointing to its "written set of rules", which state, inter alia, that employees are

---

[13] Strawberry Park takes liberties in characterizing the record, presumably to make its decision to terminate King seem more reasonable: Strawberry Park states that Euell "would talk to Klemm quite a bit over the few short weeks [King] was employed, asking for advice on how to manage [King] who was a challenging employee." See Def.'s Mem. at 24–25.  The record supports the following: the cited LR 56(a)

expected to "use [Strawberry Park] property only for authorized purposes", Strawberry Park argues that a "violation of workplace rules is a legitimate, non-discriminatory reason for [King]'s termination . . . ."  Id. at 25; Strawberry Park Code of Conduct ("Strawberry Park Code"), Attachment B to Klemm Aff. at 3 (Doc. No. 29-5).

To show pretext, King "need only show that [Strawberry Park] was in fact motivated at least in part by . . . discriminatory animus" based on his sexual orientation. See Henry, 616 F.3d at 156–57 (emphasis added).  At this stage, King's "admissible evidence must show circumstances that would be sufficient to permit a rational finder of fact to infer that [Strawberry Park]'s employment decision was more likely than not based in whole or in part on discrimination."  Walsh v. New York City Housing Authority, 828 F.3d 70, 75 (2d Cir. 2016) (quoting Feingold v. New York, 366 F.3d 138, 152 (2d Cir. 2004)).[14]  He may do so by pointing to additional evidence of discriminatory animus, though he is not required to do so to survive Strawberry Park's Motion.  See Reeves v. Sanderson Plumbing Prod., Inc., 530 U.S. 133, 149 (2000).  "[B]ecause a prima facie case and sufficient evidence to reject the employer's explanation may permit a finding of liability" under an anti-discrimination statute, it would be error to "proceed[ ] from the premise that a plaintiff must always introduce additional, independent evidence of discrimination."  Id.

---

Statement paragraph, and Klemm's Affidavit to which it cites, states only (1) that Klemm had one interaction with King which prompted a written advisory to Euell on May 11, 2019 about King's behavior; and (2) that Klemm spoke with Euell about King on June 10, 2019.  See Pl.'s LR 56(a)2 Stmt. ¶ 34; Klemm Aff. ¶¶ 7–10.  The record does not support Strawberry Park's allegation that Euell talked to Klemm "quite a bit" about King's issues, and the court does not credit this argument.

[14] See also 42 U.S.C. 2000e-2(m) ("Except as otherwise provided in this subchapter, an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice."); Wallace v. Caring Solutions, LLC, 213 Conn. App. 605, 623 (2022) ("[T]he motivating factor test remains the applicable causation standard under CFEPA.)

King argues that Strawberry Park's alleged non-discriminatory reason is pretextual because he and "Perry have testified that [ ] Euell permitted [King] to take cleaning supplies for personal use."  Pl.'s Mem. at 8.  Because Euell "condoned [King]'s use of cleaning supplies for personal use," King continues, Strawberry Park's "reason for termination is not credible.  Furthermore, [Strawberry Park]'s code of conduct does not explicitly forbid the use of cleaning supplies for personal use."  Id.  Indeed, the Code of Conduct specifies that Strawberry Park property was not to be used for "[un]authorized purposes."  Strawberry Park Code at 3.  If a factfinder credits the testimony of King that King had brought cleaning supplies home in the past only after receiving permission from Euell to do so, it would be reasonable to also find that King had not violated Strawberry Park's rules.  It follows, therefore, that a reasonable juror could find that the proffered reason for King's termination—that he broke the rules by taking cleaning supplies home—was false.  A juror could further find the reason to be pretext for discrimination because (1) Klemm and Euell had not discussed King taking cleaning supplies in the June 10 meeting when Klemm allegedly encouraged Euell to let King go, see Pl.'s LR 56(a)2 Stmt. ¶ 34, and (2) the record would support a reasonable juror's finding that Klemm only ever took cleaning supplies with Euell's express permission.[15]

---

[15] King's testimony, that he had not brought supplies home the day before he was fired because Euell did not give permission, does conflict with Perry's testimony.  Perry stated that, when King asked if he could bring cleaning supplies home the day before he was terminated, Euell gave him permission and King therefore did take supplies that day.  See Perry Dep. at 32:21–33:1.  Whether a juror credits this testimony over King's, or vice versa, a juror could still reasonably find King was never in violation of Strawberry Park policy.  If, on the other hand, a juror decides the conflicting testimony between King and Perry makes both non-credible, the juror could find in favor of Strawberry Park.  Either way, it is for a jury, not this court, to decide.  See infra p. 15.

Strawberry Park argues that King's evidence—namely his testimony and that of Perry—on this issue is "inconsistent and lack[s] credibility and weight."  Def.'s Mem. at 25.  King responds, however, that these are issues for a jury to resolve and that, "since credibility issues are inherent in resolving the factual inconsistencies in the referenced statements and testimony, the factual dispute [further] requires that summary judgment be denied."  Pl.'s Mem. at 9.  Indeed, "[c]redibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions," not those of this court.  Reeves v. Sanderson Plumbing Prod., Inc., 530 U.S. 133, 150 (2000) (internal citations omitted).  "Thus, although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe."  Id. at 151.

Strawberry Park argues that "the real question in this case is not whether [King] was wrongly terminated for stealing cleaning supplies.  Instead, the issue is whether [King] can link his termination to gender or sexual orientation discrimination."  Def.'s Mem. at 26.  The court concludes that King has come forward with sufficient evidence upon which a reasonable juror could find that his termination was, in fact, linked to discrimination on the basis of his sexual orientation.  Such evidence, if credited by a reasonable juror, includes (1) Euell's express disdain for homosexuals; (2) Euell's 'disgusted' reaction upon learning of King's bisexuality; (3) Klemm's 'encouragement' that Euell terminate King six days prior for reasons that do not include stealing supplies; (4) Euell's decision to exercise her discretion and terminate King the very day after she learned of his sexual orientation; and (5) Euell's claimed reason for King's termination being that he stole cleaning supplies when there is evidence upon which a reasonable

jury could find that he had only done so with her express permission.  While a jury is not <u>required</u> to make the preceding findings, this court cannot say that it would be unreasonable for a jury to do so.

Therefore, King has carried his burden to come forward with evidence upon which a reasonable juror could find that the proffered reason Strawberry Park gave for terminating him was false and a pretext for discrimination.[16]  The court denies Strawberry Park's Motion for Summary Judgment on King's claims of sexual-orientation discrimination.

C.      <u>Summary Judgment as to Damages</u>

Strawberry Park argues that, even if this court did not grant summary judgment on King's claims of discriminatory liability, it is entitled to summary judgment on the issue of damages.  <u>See</u> Def.'s Mot. at 2.  Specifically, Strawberry Park argues that (1) King's failure to provide a damages calculation to Strawberry Park and his lack of evidence on the Summary Judgment Record means Strawberry Park is entitled to summary judgment on damages altogether; (2) King is barred from recovering lost wages under Title VII and CFEPA because he "failed to mitigate his economic damages as required by law;" and (3) that he has not come forward with "undisputed facts . . . entitl[ing him] to any damages based on emotional distress . . . ."  <u>Id.</u>; Def.'s Mem. at 27–28.

"Some courts have limited the availability of summary judgment motions to foreclosure of specific claims, not remedies."  <u>Hamblin v. British Airways PLC</u>, 717

---

[16] Strawberry Park's argument that King must come forward with "undisputed facts" is quite puzzling to the court.  No plaintiff opposing summary judgment must come forward with <u>undisputed</u> facts; only the movant has that burden to succeed.

F.Supp.2d 303, 306 (E.D.N.Y. 2010).  However, the 2010 amendments to Federal Rule of Civil Procedure 56 specifically provided that a party could move for summary judgment "on part of each claim or defense," making clear that "summary judgment may be requested not only as to an entire case but also as to a claim, defense, or part of a claim or defense."  Gaither v. Stop & Shop Supermarket Co. LLC, 84 F. Supp. 3d 113, 123 n.8 (D. Conn. 2015) (citing Fed. R. Civ. P. 56 Advisory Committee Note (2010)) (internal quotations omitted).  In fact, even before the Rule was amended, "the Second Circuit has regularly reviewed grants of 'partial summary judgment,' eliminating elements of damages before trial . . . ."  Hamblin, 717 F.Supp.2d at 308 (collecting cases).

### 1.    Evidence of Damages on the Record

Strawberry Park begins its arguments regarding King's entitlement to damages with the following:

> Despite the Court's Scheduling Order of February 10, 2021, ordering Damage Analysis to be provided in this case to [Strawberry Park] by [King], however, [King] has failed to comply with such order.  To the extent that any of [King]'s claims of discrimination survive disposition, [King] has presented no evidence to support an award of damages for lost wages and benefits, or emotional distress . . . .  Summary judgment as to Plaintiff's economic damages should be rendered in Strawberry Park's favor, in the absence of proffered record evidence substantiating any such damage.

Def.'s Mem. at 27–28; see also Pl.'s LR 56(a)2 Stmt. ¶ 54.  In his LR 56(a)2 Statement, King "[d]enie[s] that Defense counsel did not have a damages analysis" and directs the court to "see attached Exhibit C."  Pl.'s LR 56(a)2 ¶ 54 (response).  King did not attach an Exhibit C.  See generally Pl.'s Objection materials (Doc. Nos. 30, 30-1, 30-2, 30-3, 30-4).

18

The court notes at the outset the peculiarity of both plaintiff and defendant counsels' actions here.  It appears that the only efforts made by defendant counsel to obtain the damages analysis from plaintiff counsel was to send a single email, nearly a year past the deadline for the anlysis.  See Kelly Affidavit, Def.'s Ex. H ¶¶ 3–4 (stating she did not receive the Damage Analysis by due date of March 31, 2021, and that, "[o]n or about February 18, 2022, [she] sent an email" to King's counsel "inquiring as to whether a damage analysis would be forthcoming" and receiving no response).  The court wonders, if said analysis was missing, why defendant counsel did not notify the court of such pendency in one of the six joint status reports filed since the missed deadline.  See generally Joint Status Reports filed after alleged March 31, 2021 deadline (Doc. Nos. 17, 21, 23, 28, 31, 32) (pushing back discovery deadlines to January 31, 2022, and subsequently stating that formal discovery is complete).  Plaintiff counsel's only attempt to rebut defendant counsel's claim that a damages analysis was not provided in discovery is to cite to an exhibit that was not provided.

King's counsel filed Exhibit C in response to the court's inquiry.  See Ex. C (Doc. No. 35).  Exhibit C is a copy of an emailed letter to the CHRO, copied to defendant's counsel, setting forth the category of damages sought (back and front pay, emotional distress damages and attorney's fees) and including calculations and demand amounts. Id.  During Oral Arguments, the court inquired why this disclosure—to which plaintiff continues to adhere—along with plaintiff's initial disclosure of the categories of damages sought, see Ex. E at II.b at p. 2 (Doc. No. 29-6), was insufficient to put defendant on

notice of the category and amounts of damages sought.[17]  Defendant did not claim any prejudice or inability to prepare for trial.

The cases cited by defendant are of little relevance.  They involve courts in this Circuit facing similar failures to provide damage calculations in discovery have not held it to be fatal to the plaintiffs' claims for damages.  See, e.g., Funk v. Belneftekhim, No. 14-cv-376 (BMC), 2020 WL 7642868, at *6 (E.D.N.Y. Dec. 23, 2020) (holding that "defendants did not need a computation to determine whether plaintiffs have sustained damages; the claims do not require a set amount of damage" but rather "the theory of damage").  Just recently, a court in the Southern District of New York denied a defendant's argument on summary judgment that the plaintiff should be precluded from introducing damages for failure to submit calculations in discovery.  See Logan Cheng v. Wengui Guo, No. 20-cv-5678 (KPF), 2022 WL 4237079, at *8 (S.D.N.Y. Sept. 13, 2022).  The court there held that because the plaintiff "disclosed the nature of his claimed damages in his initial disclosures and in his deposition", he satisfied the minimum requirement of Federal Rule of Civil Procedure 26.  Id. (emphasis added).  While the plaintiff's failure to "provide a numerical calculation of his damages may preclude him from suggesting a specific figure to a trier of fact in a later stage of litigation, or from relying on certain evidence to demonstrate the extent of his damages", the court continued, the plaintiff's "failure to provide a damages calculation d[id] not immunize [the d]efendant from liability for damages."  Id. at *8–9.

---

[17] Defendant requested job search discovery and received none and medical records and received authorizations.  The attorney fees number is subject to recalculation at trial.

Here, King, albeit in a precedent administrative action, disclosed both the type and amount of damages sought and, at Oral Argument, confirmed that he continues to adhere to that disclosed claim (subject to an update on attorney's fees). The court concludes that King has disclosed his damage categories, amounts and calculation where appropriate.

### 2.    Failure to Mitigate

Strawberry Park next moves for summary judgment as to the issue of whether King mitigated his damages, as required to recover lost wages under the anti-discrimination statutes.[18] Def.'s Mem. at 28. Though statutes like Title VII entitle claimants to receive backpay if successful on their discrimination claims, "[v]ictims of employment discrimination are required to mitigate their damages." Greenway v. Buffalo Hilton Hotel, 143 F.3d 47, 53 (2d Cir. 1998). While an employee must "use reasonable diligence in finding other suitable employment," id., it is the employer who must prove "(1) that suitable work existed, and (2) that the employee did not make reasonable efforts to obtain it." Broadnax v. New Haven, 415 F.3d 265, 268, 270 (2d Cir.2005) (citing to Greenway, 143 F.3d 47). The employer need not "establish the availability of comparable employment," however, in cases where the employer "can prove that the employee made no reasonable efforts to seek such employment." Greenway, 143 F.3d at 54. Because the CFEPA is analyzed in the same manner

---

[18] King's request for "lost wages" can only be construed, in the absence of any explanation whatsoever from King himself, to mean wages that King would have made from Strawberry Park had he not been wrongfully terminated. See also Ford Motor Co. v. E.E.O.C., 458 U.S. 219, 230 (1982) ("Title VII's secondary, fallback purpose is to compensate the victims for their injuries. To this end, [ . . . Title VII aims] to make the victims of unlawful discrimination whole . . . by restoring them . . . so far as possible [ ] to a position where they would have been were it not for the unlawful discrimination.") (internal citations and quotations omitted). This is commonly termed "backpay", see e.g. BACKPAY, Black's Law Dictionary (11th ed. 2019), and the court refers to it accordingly.

as Title VII cases, it follows that the Greenway rule would also be applicable as to mitigation of damages in cases brought under the CFEPA.  Compare 42 U.S.C. § 2000e-5 ("Interim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable.") with Conn. Gen. Stat. § 46a-86(b) ("Interim earnings, . . . or amounts which could have been earned with reasonable diligence on the part of the person to whom back pay is awarded shall be deducted from the amount of back pay to which such person is otherwise entitled.").

Strawberry Park argues that King "did not mitigate his damages . . . after his employment with Strawberry Park ended."  Def.'s Mem. at 29.  It bases this argument on the undisputed fact that King "admitted that he did not look for work and he offered no legitimate reason why he did not."  Def.'s Mem. at 29; see also Pl.'s Mem. ¶ 53.  In response, King only argues that summary judgment is unwarranted because Strawberry Park "has failed to show that [King]'s damages would have been reduced to zero if he had performed diligent job searches", because "the failure to mitigate can only reduce damages."  Pl.'s Mem. at 10 (citing Richard Parks Corrosion Tech., Inc. v. Plas-Pak Indus., Inc., No. 3:10-CV-437(VAB), 2015 WL 5708541, at *5 (D. Conn. Sept. 29, 2015)).  King's cited case, however, is inapposite to the case at bar because is not an employment discrimination action, but rather one dealing with contracts.  While the language of Title VII and CFEPA's respective provisions on back pay would appear to support King's interpretation—that is, that mitigation efforts reduce back pay award entitlement rather than barring it altogether—the Supreme Court has held otherwise.  In Ford Motor Co. v. E.E.O.C., the Court's ultimate holding that an "unemployed or

underemployed claimant" under Title VII "forfeits his right to backpay if he refuses a job substantially equivalent to the one he was denied", 458 U.S. at 232, has been read to mean that the mitigation provisions in Title VII and CFEPA operate as complete bars to recovery if mitigation attempts are not shown, see, e.g., Bergerson v. New York State Off. of Mental Health, Cent. New York Psychiatric Ctr., 526 F. App'x 109, 112 (2d Cir. 2013) ("Because defendant demonstrated that [plaintiff] failed to mitigate damages after she left [employment] on September 26, 2007, [plaintiff] was not entitled to back pay after that date.").

Because it is undisputed that King did not seek employment of any kind after being terminated at Strawberry Park, following Greenway, no reasonable juror could find that King mitigated his damages as required by Title VII and CFEPA.  The court, therefore, grants Strawberry Park's Motion for Summary Judgment on the issue of backpay, or lost wages.[19]

### 3.    Emotional Distress

Finally, King argues that it is entitled to summary judgment on the issue of King's entitlement to emotional distress damages because, "[b]ased on the totality of [King]'s own testimony, which forms the record evidence on the issue of emotional distress damages, it appears unlikely that any rational trier of fact could conclude that [King] suffered compensable emotional distress as a result of any discrimination he may have experienced while employed by Strawberry Park."  Def.'s Mem. at 30.  Strawberry Park characterizes King's emotional distress damages claim as one of "garden-variety"

---

[19] Although King claimed both lost wages, or back pay, and front pay in his Damages Analysis, see Pl.'s Ex. C at I–II, he makes no claim to front pay in any other memoranda—including his Complaint. See generally Compl.; Pl.'s Opp.; Pl.'s LR 56(a)2 Stmt.  Nonetheless, summary judgment would be warranted on the issue of frontpay for the same reasons outlined above.  See Section  IV.C.2, supra.

emotional distress, "where the evidence is limited to [a p]laintiff's own testimony, describing his distress in general and conclusory terms." Id.  King counters that, "[a]lthough it may be argued that [he] did not diligently seek medical treatment for his emotional pain and suffer[ing], [King]'s testimony does not eliminate the issue for consideration by a trier of fact."  Pl.'s Mem. at 10.

In employment discrimination cases claiming emotional distress damages, a "[p]laintiff is entitled to proceed to trial in reliance on [his] own testimony regarding the emotional distress [he] suffered, although there is no requirement that such testimony ultimately be found credible" in the absence of other corroborating evidence or expert testimony.  Tehan v. Sacred Heart Univ., No. 3:06CV267 (PCD), 2008 WL 11417097, at *3 (D. Conn. Oct. 31, 2008).  In the instant case, a rational juror could credit King's testimony that he experienced an increase in paranoia because of his termination by Strawberry Park:

> I'm constantly paranoid. Constantly – you know, I don't want to go out a lot of the time now.  I don't want to associate a lot of the time with people.  I'm very paranoid about who I talk to and what I – and who I – and what I talk about with people.  Like it's just crazy.  The paranoia that I have is just beyond insane.

King Dep. at 94:11–17.  A juror could hear such testimony, for example, and find that King's paranoia did in fact get worse after he was fired:[20] from King's perspective, he could not foresee that revealing his sexual orientation would lead to termination, and he may very well feel paranoid about what he says in the future out of fear it could lead to similarly severe consequences.  In any event, summary judgment is not warranted at

---

[20] King was diagnosed with PTSD in 2018, and Strawberry Park argues paranoia is a symptom of that rather than caused by Strawberry Park's alleged discrimination.  Def.'s Mem. at 31.

this juncture because, "[r]ather than make the determination on summary judgment, it is more appropriate to assess whether [King] has established emotional distress, including actual harm and causation, with sufficient specificity upon consideration of the full trial record." Tehan, 2018 WL 11417097 at *3.

The court, therefore, denies Strawberry Park's Motion for Summary Judgment as to the issue of King's emotional distress damages.

## V.    CONCLUSION

For the reasons discussed above, the defendant's Motion for Summary Judgment is granted with respect to King's gender discrimination claims under CFEPA and Title VII (Counts One and Three (first part)), as well as King's claim for damages in the form of backpay, or lost wages.  Strawberry Park's Motion is denied in part, with respect to King's sexual orientation discrimination claims under CFEPA and Title VII, and his damage claim for emotional distress damages.

**SO ORDERED.**

Dated at New Haven, Connecticut this 28th day of February 2023.


  /s/ Janet C. Hall
Janet C. Hall
United States District Judge